**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | ) | Case No. 19-11133-TPA |
| Carl D. Richter | ) | Chapter 13 |
| Jennifer A. Richter | ) | |
|      Debtors | ) | |
| | ) | Related to Documents |
| | ) | # 29 and 30 |
| United States Trustee | ) | |
|      Movant | ) | |
|      v. | ) | |
| | ) | |
| Carl D. Richter | ) | |
| Jennifer A. Richter, and | ) | |
| Ronda J. Winnecour, Chapter 13 Trustee | ) | |
|      Respondents | ) | |

**TRUSTEE'S BRIEF IN OPPOSITION U.S. TRUSTEE'S MOTION TO DISMISS**

**I.    INTRODUCTION**

The United States Trustee (UST) erroneously contends that Chapter 13 relief is not available to joint debtors if one spouse is lawfully employed under state law by a medical marijuana business. The UST makes this assertion notwithstanding that the plan is to be funded solely by moneys not associated with the medical marijuana business and without regard to that business's legal standing under state law. The Motion to Dismiss is couched as an objection to Debtors' "good faith." Under the circumstances of this case there is no evidence of a lack of good faith.

Alleging that one debtor in a joint case works for a medical marijuana business does not establish bad faith supporting dismissal of a chapter 13 case. The UST must admit that the business is completely legal under state law and that the Department of Justice has publicly declared that it will not pursue the debtor or her employer so long as that business complies with state law. As a matter of law, it cannot be bad faith to seek Chapter 13 relief based on these facts.

1

The argument of the UST appears to be that a debtor who has any connection, however tenuous, with what is, under Pennsylvania state law, a legal medical marijuana business, must be denied the opportunity to seek bankruptcy relief. This argument is not tethered to any provision of the Bankruptcy Code. The UST concedes this point by defaulting, as it must, to an argument that the filing was in bad faith – a fact-based inquiry on the totality of circumstances that the UST cannot win.

This case involves a husband and wife filing jointly. Mr. Richter is disabled and receives social security disability income which is to fund the chapter 13 plan payment. Mrs. Richter is employed by a medical marijuana business. She took this job following her husband's disability and after her efforts to find other employment proved fruitless. She took this job solely to support herself, her husband, and their two daughters. The UST offers the Richters a Hobson's choice. They can choose unemployment (in a local environment where reemployment is exceedingly unlikely), in which case they lack the income required for minimal necessities or the ability to reorganize; or they must forego the fresh start protections of bankruptcy, in which case they will be subject to collection efforts of their creditors. This choice is particularly unavailing in this time of coronavirus sequestration when unemployment is at a record high.

Fortunately, the Bankruptcy Code requires no such Hobson's choice. There is no *per se* requirement that joint debtors be denied bankruptcy relief simply because one of them is employed in a legal medical marijuana business. Rather, the law is clear that whether relief can be granted turns on whether the case was filed and the Chapter 13 plan has been proposed in "good faith." Under the "totality of circumstances" analysis, the Richters satisfy the requirements of good faith under both sections.

The Richters are not public enemies number one and two, are not members of a

2

crime family (much less heads of such a family), are not members of a cartel, and are not drug pushers selling drugs from the trunk of their car late at night. They are not seeking bankruptcy protection so that they can pursue a criminal enterprise, but are typical consumer debtors, seeking bankruptcy protection because of consumer debt. There is nothing about this case that indicates a lack of *bankruptcy* good faith. The only reason this case is before the Court is because of the mess created by the inconsistency between federal and state laws on the production, distribution, and use of medical marijuana in Pennsylvania, a mess that Mr. and Mrs. Richter had no part in creating. The question of *bankruptcy* good faith, which is the only matter at issue, is subject to discretion of the Bankruptcy Court and that discretion is, under the facts of this case, best exercised by the denial of the Motion to Dismiss.

## II.    BRIEF STATEMENT OF THE FACTS

### Facts specific to instant case

This case was filed on November 14, 2019. According to the Richter's Schedules, Mrs. Richter earns gross monthly income of $3,329.88, and Mr. Richter is unemployed and receives $1,181 monthly in Social Security Disability income. Schedule J lists monthly expenses as $2,563.45. The Richters' initially filed plan proposes to pay $840.23 per month to the Chapter 13 Trustee for 60 months out of Mr. Richter's Social Security Disability income. The Richters are below median income debtors, and their plan payments are current. The debts that the Richters have reported consist of typical consumer debts. There is no evidence of financial extravagance before or after the petition. The Richters' motive for seeking relief is that they are unable to pay their consumer debts.

At the Meeting of Creditors held on January 28, 2020, Mrs. Richter informed the

3

Trustee's counsel that she works for a company that sells medical marijuana. The company is authorized and regulated under Pennsylvania state law. Mrs. Richter's employer conducts business in full and open view of both state and federal authorities. In the course of her employment, Mrs. Richter pays the employee portion of payroll taxes, which includes federal, state, and local income tax.

The Trustee's counsel was advised that Mrs. Richter took the job with her current employer after her husband had a severe heart attack. Prior to that time Mr. Richter's income had supported the family. The Richters have two daughters, ages 8 and 10. Prior to Mrs. Richter's current employment she had a part time job at a garden center, which did not pay enough to support her family. The area of northwestern Pennsylvania where the Richters live has been economically depressed for a long time. The economic impact of the current pandemic is presumably making things worse.

Mrs. Richter accepted her current employment because it would provide income needed to support her family. The Trustee has been advised that Mrs. Richter believes she cannot obtain employment that pays as well as her current job; that her employment history consists of part-time jobs; and that no other full-time jobs are available to her. Mr. Richter is physically unable to return to work.

The Richters live in Jefferson County, Pennsylvania. The County has a population of approximately 44,084 people and a median household income of $46,818. The Debtors' household income is $42,420.60 per year. Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period, Doc. No. 7. Currently, the "total civilian labor force (not seasonally adjusted) for Jefferson County in February 2020 was 20,700, of which 19,400 were employed and 1,300 were unemployed. The

unemployment rate was 6.2%."[1]

The Trustee is unaware of any instance of deception by the Richters.  The Trustee believes the Debtors to have been forthright in their representations to the Court.  They appear to have honestly answered all questions posed by creditors and the Trustee both before and after filing their petition.

### Pennsylvania actions relevant to the legalization of medical marijuana

In legalizing medical marijuana in Pennsylvania, the general assembly found and declared, among other things, that: scientific evidence suggests that medical marijuana is one potential therapy that may mitigate suffering in some patients and also enhance quality of life; and that a program which allows access to medical marijuana will enhance patient safety while research into its effectiveness continues.[2]  In other words, in Pennsylvania, the manufacture of medical marijuana is considered a benefit that enhances the quality of life for some patients.  The manufacture and distribution of medical marijuana was also identified as a Pennsylvania life-sustaining business during the current Covid-19 pandemic.[3] As an employee in what is considered a life-sustaining business in Pennsylvania, Mrs. Richter not only contributes to the mitigation of suffering and the enhancement of the quality of life for many Pennsylvania residents, but she also contributes her fair share to the *Federal,* state and local purses.

### The Justice Department's internal guidance on marijuana prosecution in states that have legalized its possession, use, manufacture, and sale reflects a determination that employment in the industry does not warrant prosecution

---

[1]  PA Dept. of Labor and Industry:
https://paworkstats.geosolinc.com/vosnet/lmi/default.aspx?pu=1&plang=E
(April 7, 2020).  These numbers are presumably worse today due to the COVID-19 virus pandemic.
[2] See Section 101 of the Medical Marijuana Act, 35 P.S. §§10231.101- 10231.2110
[3] See https://www.media.pa.gov/pages/Health-details.aspx?newsid=746 ("Medical marijuana grower/processors and dispensaries are considered life-sustaining businesses under the Governor's order for nonlife-sustaining businesses to close.")

In light of state ballot initiatives that legalized the possession of small amounts of marijuana and that provided for state regulation of marijuana production, processing, and sale, the Justice Department adopted a general policy of non-interference in August 2013. See James M. Cole, Deputy Attorney General, Memorandum for all United States Attorneys, August 29, 2013 (the "Cole Memorandum").[4]

As noted in the Cole Memorandum, the Justice Department only stepped in to enforce the Controlled Substances Act (CSA) when the use, possession, cultivation, or distribution of marijuana threatened to cause one of several harms, those being:  a) distribution of marijuana to minors; b) revenue from the sale of marijuana flowing to criminal enterprises, gangs, and cartels; c) diversion of marijuana from states where it is legal under state law in some form to other states; d) state-authorized marijuana activity being used as a cover or pretext for the trafficking of other illegal drugs or other illegal activity; e) promoting violence and the use of firearms in the cultivation and distribution

---

[4]   https://www.justice.gov/iso/opa/resources/3052013829132756857467.pdf.  The Chapter 13 Trustee ("Trustee") realizes that the discrepancy between the Justice Department's non-enforcement of federal criminal law in those states that have legalized marijuana and the UST's attempt in the instant case to deny individuals access to the federal courts because they are employed in state sanctioned activity is tangential to the issues in this case. It is tempting to point out that the UST is an office within the same Department of Justice that has officially declared it will not prosecute Mrs. Richter or the business she works for so long as Pennsylvania law is respected. Perhaps the UST abuses its discretion to "prosecute" this Motion to Dismiss, contrary to the official policy of the Justice Department. But the Court need not go there. The Justice Department's decision to take a "hands off" approach supports the Trustee's contention that there can be no *per se* rule. Practically speaking, if the complained conduct was so egregious that the Debtors *must be* denied the protections of the bankruptcy law simply on the basis of such conduct, common sense suggests that the full resources of the federal government would be bought to bear to stamp it out. On the other hand, if the most the federal government does in the face of such an "affront" to federal criminal law is to give it a collective shrug, there is no policy reason to diverge from the "totality of circumstances test." Furthermore, that collective shrug is, like all of the other factors in this case, only one of the many

6

of marijuana; f) exacerbation of drunk driving and other adverse public health consequences associated with marijuana use; g) growing of marijuana on public lands and the attendant public safety and environmental dangers posed by marijuana production on public lands; and h) marijuana possession or use on federal property. None of the identified harms exist in the instant case.

The Cole Memorandum further observed that the federal priorities are less likely to be threatened in jurisdictions that have enacted laws legalizing marijuana in some form and that have also implemented strong and effective regulatory and enforcement systems to control the cultivation, distribution, sale, and possession of marijuana. The Trustee assumes that the UST would agree that Pennsylvania is such a jurisdiction and that a debtor's employment in the industry in Pennsylvania threatens no federal "priority."

On January 4, 2018, Jefferson B. Sessions rescinded the Cole Memorandum.[5] Significantly, though rescinding the Cole Memorandum, Mr. Sessions stated that he did so because he believed the Justice Department already had well established general principles that govern federal prosecutions requiring prosecutors to weigh all relevant considerations including federal law enforcement priorities, the seriousness of the crime, the deterrent effect of criminal prosecution, and the cumulative impact of particular crimes on the community.[6]

In January 2019, Attorney General William P. Barr implicitly rescinded Mr. Sessions rescission of the Cole Memorandum, while acknowledging the mess created by

---

circumstances to be considered in determining whether the Debtors are, as a matter of fact, acting in good faith by seeking bankruptcy relief.
[5] https://www.justice.gov/opa/press-release/file/1022196/download.
[6] Even under the Sessions rescission, federal prosecutors were directed to consider the totality of circumstances in deciding whether the conduct warrants prosecution. By contrast, the UST seems to argue the Federal judiciary lacks discretion to decide

the opposition of state and federal criminal law on the question of marijuana.[7]

The Justice Department is on public record that it will not prosecute Mrs. Richter for a violation of the CSA solely on the basis that she is a W2 employee of a manufacturer of medical marijuana authorized and regulated under Pennsylvania state law. The Trustee contends that the UST is bound by the official pronouncements of the Department of Justice and thus cannot maintain its Motion to Dismiss or Objection to Confirmation without some evidence of bad faith other than the benign fact of Mrs. Richter's employment. There is no such evidence.

### III.    LEGAL ARGUMENT

### (A)    Under the totality of the circumstances, the Debtors' Chapter 13 Petition meets the good faith requirements of 11 U.S.C. § 1307(c).

Though there is overlap between the evaluation of the good faith elements of 11 U.S.C.  §1307(c) and §1325(a)(3*), see, e.g., McKinney v. McKinney (In re McKinney)*, 507 B.R. 534, 552 (Bankr. W.D. Pa. 2014) (citing *In re Young*, 2013 Bankr. LEXIS 5056, *3 (Bankr. M.D. Pa. Dec. 2, 2013) (the same totality of the circumstances test for determining whether to dismiss a case under §1307 is used to evaluate whether a plan was filed in good faith)), there are differences between the two sections.

Section 1307, and specifically, sub-part (c), states that: "A court may dismiss a case for cause *when it is deemed to be in the best interests of creditors and the estate*."

---

whether, under the totality of circumstances, the Richters are acting in *bankruptcy* good faith.
[7]https://www.judiciary.senate.gov/imo/media/doc/Barr%20Responses%20to%20Booker%20QFRs1.pdf, Q.15, p. 217. As recorded in the excerpt, Mr. Barr, in the course of his testimony observed, "However, I think the current situation is untenable and really has to be addressed. It's almost like a backdoor nullification of federal law. . . **. I'm not going to go after companies that have relied on the Cole Memorandum** (emphasis added).  However, we either should have a federal law that prohibits marijuana everywhere—which I would support myself, because I think it's a mistake

(Emphasis added.)   Section 1307(c) provides a non-exhaustive list of factors that may constitute a basis for dismissal.  *In re Lilley*, 91 F.3d 491, 494 (3d Cir. 1996).  None of the factors listed in §1307(c) expressly, or implicitly, requires dismissal of a Chapter 13 filed by a W2 employee of a state sanctioned medical marijuana business.

*Lilley* holds that a lack of good faith in filing, though not among the listed factors in the section, is sufficient cause for dismissal under section 1307(c).  *Id.* at 496.  The UST seeks dismissal for bad faith based on the narrow thread that Mrs. Richter is a W2 employee of a state sanctioned medical marijuana business.[8]

As set forth in *Lilley,* the good faith inquiry is a fact-intensive determination, in light of the totality of the circumstances, and is best left to the discretion of the bankruptcy court.  *Id.*  See also, *In re Monteleone*, 553 B.R. 288, 293 (Bankr. W.D. Pa. 2016) (noting that Bankruptcy Court has considerable discretion in determining whether 'cause' for dismissal exists).  Factors relevant to the totality of the circumstances inquiry may include the nature of the debts, the timing of the petition, how the debts arose, the debtor's motive in filing the petition, how the debtor's actions affected creditors, the debtor's treatment of creditors both before and after the petition was filed, and whether the debtor has been forthcoming with the bankruptcy court and the creditors. *Lilley*, 91 F.3d at 496.

The underlying inquiry into good faith is focused on the debtor's intent, and whether the filing constitutes an abuse of the provisions, purposes, and spirit of the

---

to back off on marijuana. However, if we want a federal approach, if we want states to have their own laws, then let's get there, and let's get there the right way."

[8]  The UST does allege that the case should be dismissed because the plan makes no provision for payment to unsecured creditors.  The Trustee perceives this to be, in the first instance, a question of whether the plan represents the Richters' best efforts, which is a question better addressed at the time of final confirmation.

9

bankruptcy law. *Hackerman v. Demeza (In re Demeza)*, 567 B.R. 473, 477 (Bankr. M.D. Pa. 2017).  See also *Karanikas v. Cartwright (In re Cartwright)*, 2014 Bankr. LEXIS 2518, *21 (Bankr. M.D. Pa. 2014) ("The focus of the good faith inquiry in Chapter 13 is often whether the filing is fundamentally fair to creditors and, more generally, is fundamentally fair in manner that complies with spirit of Bankruptcy Code.")  It is important that dismissal for "bad faith" should only occur in narrow circumstances so as to avoid "a risk of judicial usurpation of the legislative power to determine the scope of and eligibility for bankruptcy relief in general or under a particular chapter." *In re Manfredi*, 434 B.R. 356, 359 (Bankr. M.D. Pa 2010).  A finding of lack of good faith should not be made lightly, and dismissal should be utilized only in egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence. *Id.* (citing *Perlin v. Hitachi Capital America Corp.*, 497 F.3d 364, 373 (3d Cir. 2007)).

As the moving party, the UST has an initial burden of production to place the Richters' good faith in issue. *In re Krebs*, 2001 Bankr. LEXIS 552, *12 (Bankr. E.D. Pa. Apr. 27, 2001).  Although debtors have the ultimate burden of persuasion on the question of good faith, the moving party must still present sufficient evidence of bad faith to legitimately put the matter at issue.

    (1) *Mrs. Richter's employment in the legal Pennsylvania medical marijuana industry does not alone satisfy the burden of production or support dismissal; there is no per se rule that this case must be dismissed.*

There is no controlling authority in this circuit on whether employment in the legal Pennsylvania medical marijuana industry, alone, warrants dismissal of a chapter13 case on "good faith" grounds.  This Court writes on a clean slate.

*Olson v. Van Meter (In re Olson)*, 2018 Bankr. LEXIS 480 (9th Cir. B.A.P. Feb. 5,

2018), is instructive on the proper analysis when confronted with a good faith challenge. In *Olson*, the bankruptcy court's dismissal of a chapter 13 case was reversed by the 9th Circuit B.A.P.. The case involved a 92-year old legally-blind debtor who resided in an assisted living facility and who was the owner of a shopping center that leased space to a marijuana dispensary before and after the commencement of the case. *Id.* at *7. The 9th Circuit B.A.P. found that the bankruptcy court failed to articulate the legal basis for dismissal. *Id.* at *13. The B.A.P. held that the case could potentially have been dismissed for bad faith under § 1307(c) only after the consideration of the totality of the circumstances. Significantly, the concurrence in *Olson* observed that "[a]lthough debtors connected to marijuana distribution cannot expect to violate federal law in their bankruptcy case, the presence of marijuana near the case should not cause mandatory dismissal." [9] *Id.* at *18.

Albeit redundant, a consideration of the totality of circumstances requires a consideration of the totality of the circumstances. The only relevant circumstance that the UST offers in support of its contention that Mrs. Richter is acting in bad faith is that she is employed in business that the Department of Justice could, but has declared it won't, prosecute for violation of federal law. The federal government has chosen to: (a) honor state sovereignty; and (b) to allow such businesses to operate. Debtors who work in an industry deemed beneficial and life-sustaining to state residents, who contribute to the funding of *federal,* state, and local government through payroll taxes, and who, as gainfully employed citizens, contribute to the local economy as well as supporting their

---

[9] Cf. *Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956, 960-61 (9th Cir. 2015) (bankruptcy court abused its discretion by failing to conduct the balancing test required by doctrine of unclean hands, and instead determining that unclean hands applied solely because the creditor had engaged in marijuana distribution).

day to day living expenses, are acting in *good* faith under any rational view.[10]

The fact that Mrs. Richter works in the medical marijuana industry in a state where it is legal under circumstances that would not be prosecuted by the federal government affects no creditors, is immaterial to the treatment of creditors, reflects no lack of disclosure, was not the cause for the bankruptcy, and in no way constitutes an abuse of the provisions, purposes, and spirit of *bankruptcy* law. The Richters filed Chapter 13 for an opportunity to pay their creditors to the extent they are able under protection of the bankruptcy court, not as part of a scheme to violate federal criminal law.

There is nothing in the express language of the Bankruptcy Code that prohibits a debtor entangled in the conflict between federal and state laws on medical marijuana from seeking bankruptcy relief. The *per se* dismissal for a lack of good faith advocated by the UST simply because of employment in the marijuana industry usurps the legislative power to determine the scope of and eligibility for bankruptcy relief.

The UST's argument that the Chapter 13 Standing Trustee cannot handle marijuana tainted money fails utterly on several levels. Of course, the Internal Revenue Service and other government agencies and instrumentalities do exactly what the UST accuses the Trustee of doing – they handle payroll taxes and other payments by both Mrs. Richter and her employer. Ironically the UST itself does the same – in this very case the UST received 28.33% of the filing fee paid by the Richters. See 28 U.S.C. §589a(b)(1)(B). The Court and the Trustee are not entangled in any violation of federal law. No such

---

[10]   The local office of the United States Trustee is, of course, acting in accordance with the policies set by the program's executive office. The Trustee is at a loss to explain how the executive office's policy to, in effect, punish W2 employees who work in a state sanctioned industry can be reconciled with the overall justice department policy of non-interference, or why it is that Mrs. Richter's employer is permitted to operate free

"harm" is occurring in this case.  The Trustee is handling social security income, and neither the Court nor the Trustee are entangled in Mrs. Richter's employer's business.

Mrs. Richter's employment is not the reason for the bankruptcy.  The best interest of creditors is hardly served by Mrs. Richter giving up her job so she could obtain bankruptcy relief.  If anything, the best interests of creditors is better served by her continued employment.

Whether the fact that Mrs. Richter's employment in the Pennsylvania medical marijuana business satisfies the UST's burden of production, the totality of the circumstances establishes good faith.  Mrs. Richter is merely a W2 employee of a business that is connected in some way with the medical marijuana industry.  The Richters have provided income records indicating that all necessary employment taxes have been withheld and no evidence of a federal crime has been presented other than Mrs. Richter testifying that her employer is somehow connected to the Pennsylvania medical marijuana industry.  Her employer is not a part of the bankruptcy estate in this case.  The actions of Mrs. Richter's employer are irrelevant to the questions of (1) whether the Richters have filed their petition in good faith, and (2) whether the Richters have *proposed* a plan by a means prohibited by law.

The Richters have reported a combined monthly income of $3,858.93, with $2,563.45 reported in monthly expenses.  (Doc. No. 1).  Their Chapter 13 Plan proposes a monthly plan payment of $840.23.  (Doc. No. 8).  Mr. Richter has indicated that his monthly Social Security income is $1,181.00 per month and that he has voluntarily used this otherwise exempt income to fund the plan it its entirety.  (Doc. No. 33, ¶¶4, 5, and 9).

---

of the interference of the federal government, while her particular circumstances are being subject to the level of prosecution they are.

Under the totality of the circumstances, the Richters' petition was filed in good faith and should not be dismissed under § 1307(c).

(2)    *The instant case is not a violation of § 727(a)(8)*

The UST argues that the Debtors are seeking to circumvent the provisions of 11 U.S.C. § 727(a)(8) by using this chapter 13 case to discharge general unsecured debt.

The UST has not and cannot cite any case in support of this argument.  Section 727(a)(8) does not apply in a Chapter 13 case, and it is not a limit on eligibility for Chapter 13 relief. The Code limits the ability to obtain a discharge in a Chapter 13 case based on proximity of a Chapter 7 case. See 11 U.S.C. §1328(f).  Congress has expressly authorized a debtor to obtain a discharge in a Chapter 13 case filed four or more years after a prior Chapter 7 filing.  It cannot be bad faith or a violation of §727(a)(8) for the Richters to file a Chapter 13 case for which they are eligible debtors.

"'[I]t is not "bad faith for [the Debtor] to adhere to the provisions of the Bankruptcy Code and, in doing so, obtain a benefit provided by it.'"  *Matter of Ogden*, 570 B.R. 432, 438 (Bankr. N.D. Ga. 2017) (quoting *In re Cranmer*, 697 F.3d 1314, 1319 (10th Cir. 2012)).  Where the Bankruptcy Code allows a debtor to discharge a debt in Chapter 13 that the debtor would not have otherwise been able to discharge in Chapter 7, it is not for this Court to substitute its judgment for Congress'.  *In re Green*, 2018 Bankr. LEXIS 899, *4 (Bankr. S.D. Ga. Mar. 27, 2018).

The UST seems to argue that it is bad faith for the Richters to be unable to pay a greater portion of unsecured debts under the projected disposable income test in 11 U.S.C. §1325(b).   That test has nothing to do with Mrs. Richter's employment. It is at least confusing for the UST to argue that the Richters are not making their best effort

14

while at the same time demanding that Mrs. Richter quit her job to be eligible for Chapter 13. To the extent it is the Richters' treatment of unsecured creditors that truly concerns the UST in this case (and it's not really about Mrs. Richter's employment), then perhaps the objection, to meet the UST's burden of production, ought to specify the amount it believes should be available for unsecured creditors so the Richters can prepare a proper response.

(B)    **Section 1325(a)(3) requires the bankruptcy court to police the means by which a reorganization plan is proposed, not its substantive provisions; under the totality of circumstances test, this plan was proposed in good faith.**

"Before a bankruptcy court confirms a debtor's plan under Chapter 13, it must find that the plan was filed in good faith." *See, e.g.*, *In re Leone*, 292 B.R. 243, 245 (Bankr. W.D. Pa. 2003) (quoting *In re Smith,* 286 F.3d 461 (7th Cir. 2002)). The good faith inquiry for purposes of §1325(a)(3) is narrower than §1307 (although utilizing the same totality of circumstances analysis).

Application of §1325(a)(3) is guided by the interpretation of §1129(a)(3) set forth in *In re Garvin v. Cook Invs. NW, SPNWY, LLC.*, 922 F.3d 1031 (9th Cir. 2019). The text of §1325(a)(3) is identical to §1129(a)(3). Cases arising under Chapter 11 illustrate the way in which §1325(a)(3) operates in Chapter 13 cases. The *Garvin* court held that the good faith requirement of §1129(a)(3) focuses on the manner in which the plan has been "proposed," not the substantive provisions of the plan. *Id.* at 1033. Just as in Chapter 11 cases, other provisions of the Code test the propriety of the content of the chapter 13 plan. Mrs. Richter's employment does not preclude plan confirmation under §1325(a)(3). This interpretation is guided strictly by the text of the statute. *Id.* The 9th Circuit explained,

[T]he phrase "not by any means forbidden by law" modifies the

15

> phrase "[t]he plan has been proposed." An interpretation that
> reads the words "has been proposed" out of the second prong
> of the requirement would be grammatically nonsensical, i.e.,
> "The plan has been . . . not by any means forbidden by law."
> Moving the reference to illegality to before "proposed" fares no
> better, i.e., "The plan, not by any means forbidden by law, has
> been proposed in good faith." The Trustee's position would
> require us to rewrite the statute completely, rather than resort
> to its clear meaning. *See Duncan v. Walker*, 533 U.S. 167,
> 174, 121 S. Ct. 2120, 150 L. Ed. 2d 251 (2001) ("It is our duty
> to give effect, if possible, to every clause and word of a
> statute." (internal quotation marks omitted)).

*Id.* at 1035.

The *Garvin* case involved a challenge by the UST to confirmation, when the proposed plan involved the debtor receiving rental income from a company that grew marijuana. *Id.* The objection was denied. *Id.* at 1034. *Garvin* found that §1129(a)(3), merely "directs bankruptcy courts to police the means of a reorganization plan's proposal, not its substantive provisions." *Id.* at 1033. The Court explained that this interpretation will not "result in bankruptcy proceedings being used to facilitate legal violations," because bankruptcy courts may consider other sections of the Code in determining whether the debtor's illegal conduct is abuse, and (more importantly) "confirmation of a plan does not insulate debtors from prosecution for criminal activity, even if that activity is part of the plan itself." *Id.* at 1036 citing *In re Food City, Inc.*, 110 B.R. 808, 812 (Bankr. W.D. Tex. 1990). This conclusion came with a solemn warning that there is "no need to convert the bankruptcy judge into an ombudsman without portfolio, gratuitously seeking out possible "illegalities" in every plan, a result that would be inimical to the basic function of bankruptcy judges in bankruptcy proceedings." *Id.*

On the subject of good faith in the context of a proposed plan in the Third Circuit, see *In re Emerge Energy Servs. LP*, 2019 Bankr. LEXIS 3717, *47-48 (Bankr. D. Del. Dec. 5, 2019):

16

> The term 'good faith' is undefined in the Bankruptcy Code, but the Third Circuit has found that 'the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.' Accordingly, courts generally require that a plan 'be proposed with honesty and good intentions and with a basis for expecting that reorganization can be achieved...[or with] fundamental fairness in dealing with the creditors.' In determining whether a plan is proposed in good faith, courts consider the totality of the circumstances, focusing 'more to the process of the plan development than the content of the plan.' 'Good faith is shown when the plan has been proposed for the purpose of reorganizing the debtor, preserving the value of the bankruptcy estate, and delivering that value to creditors.'

Accordingly, the good faith in the context of a proposed plan is measured by whether it will fairly achieve results consistent with the Bankruptcy Code, is proposed honestly and with good intentions, is feasible, is fundamentally fair to creditors; and ultimately whether the plan is proposed for purposes of reorganization, preservation of asset value, and returning such value to the creditors as they are entitled to such under the Code.

Trustee believes that the final determination of good faith in the proposing of the plan needs to be evaluated in the context of the version of the plan for which final confirmation is sought. At this stage, the only evidence offered of a lack of good faith is that Mrs. Richter works in a legal Pennsylvania medical marijuana business. That, however, has nothing to do with *Bankruptcy* purposes of the plan, the Richters' honesty and intentions, the plan's ultimate fairness *to creditors*, and goals to be achieved by the plan (which is the reorganization of their *financial* affairs).

**(C)**    **Cases cited by the U.S. Trustee are distinguishable.**

Trustee believes the cases relied upon by the UST are distinguishable.  Cases consisting of Chapter 11 reorganizations of marijuana related businesses are obviously

distinguishable from a case involving a W2 employee.  Generally speaking, however, any case that treats involvement in state sanctioned marijuana business as a *per se* basis for dismissal misapplies the totality of circumstances test for dismissal.  As noted above, the Trustee believes this Court writes on a clean slate, and that the better approach is to look at the totality of the circumstances and whether the case is in the best interests of creditors rather than whether the debtor violates a federal criminal statute that the federal government has determined it will not enforce in this case.

Setting aside the obviously incomparable cases filed under other chapters of the Bankruptcy Code, this case is distinguishable from the five chapter 13 and 7 cases that the UST cites as authority.  This case is distinguishable from *In re Burton*, 610 B.R. 633 (B.A.P. 9th Cir. 2020), in that the Richters are not shareholders or proprietors of an illegal business, nor are they seeking to fund their plan from the proceeds of illegal activities. Rather, they are funding a plan from Mr. Richter's social security benefits while Mrs. Richter is lucky to have any employment.

*In re McGinnis***,** 453 B.R. 770 (Bankr. D. Ore. 2011), is distinguishable because the debtor undervalued certain property on his schedules, and most markedly, because the plan was *dependent* on establishing an ownership interest in a marijuana business.

*In re Johnson,* 532 B.R. 55 (Bankr. W.D. Mich. 2015), involved a sixty-six year old debtor who owned and operated a sole proprietorship "caregiver" operation in his home, that included 25 marijuana plants. The case involved business ownership of marijuana assets rather than a W2 employee of a separately owned business.

In *In re Arenas*, 535 B.R. 845 (B.A.P. 10th Cir. 2015), involved an attempted conversion to Chapter 13 by a debtor who owned property that included a commercial

building used as a marijuana grow-house and 25 marijuana plants, reflecting, yet again, an attempt to protect the ownership interest in marijuana assets.

In *In re Andrick*, 604 B.R. 577 (Bankr. D. Colo. 2019), confirmation was denied to a Chapter 13 debtor whose budget included an expense of $900 per month for medical marijuana. Accordingly, the problem in that case was that confirmation would have, in effect, sanctioned the use of marijuana to the exclusion of the payment of creditors. The instant case involves no attempt to pay for a drug (prohibited by the CSA) in lieu of paying creditors.

The Richters do not intend to operate a business buying or selling marijuana, or use their income to purchase marijuana. The Richters are attempting to reorganize their consumer finances through a chapter 13 repayment plan wholly funded by social security income. There remains a possibility that the final iteration of the plan will provide for a dividend to unsecured creditors. In light of the totality of the circumstances, the petition and proposed plan meet the requirements of good faith in §§ 1307 and 1325. It is not the Bankruptcy Court's responsibility to oversee the prosecution of the criminal laws, but to apply the bankruptcy law. Here, the Debtors have proposed a plan in good faith and not by any means forbidden by law. Therefore, the UST's motions to deny confirmation and dismiss this case should be denied.[11]

## IV.  **CONCLUSION**

In this time of uncertainty and economic peril, the position of the UST is short-sighted and lacking in compassion. The Richters live in an area of the state suffering economic hardship. They support two young children and have not missed a chapter 13

---

[11] If, however, the Court determines that the Debtors' conduct is unacceptable, the Court should provide Mrs. Richter some period of time to find other employment.

plan payment.  They are attempting to pay their creditors.  Unemployment is at a record high, many thousands of people are suffering the medical and economic effects of Covid-19, and the Richters are among those people with a plan for survival.  It is consistent with the purposes of Bankruptcy Code to afford them the opportunity for economic survival.

For the foregoing reasons, the U.S. Trustee's Objection to Debtors' Plan and Motion to Dismiss should be DENIED.

                                        RONDA J. WINNECOUR,
                                        CHAPTER 13 TRUSTEE

Date: April 29, 2020

                                        By: /s/ Owen W. Katz
                                        Owen W. Katz, PA I.D. 36473
                                        U.S. Steel Tower, Suite 3250
                                        600 Grant Street
                                        Pittsburgh, PA  15219
                                        (412) 471-5566
                                        Email: okatz@chapter13trusteewdpa.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | ) | Case No. 19-11133-TPA |
| Carl D. Richter | ) | Chapter 13 |
| Jennifer A. Richter | ) | |
|      Debtors | ) | |
| | ) | Related to Documents |
| | ) | # 29 and 30 |
| United States Trustee | ) | |
|      Movant | ) | |
|      v. | ) | |
| | ) | |
| Carl D. Richter | ) | |
| Jennifer A. Richter, and | ) | |
| Ronda J. Winnecour, Chapter 13 Trustee | ) | |
|      Respondents | ) | |

## CERTIFICATE OF SERVICE

I, the undersigned, certify that, in addition to NEF service on parties having entered their appearance in this case, I served or caused to be served on April 29, 2020, the foregoing document upon each of the following parties in interest by United States first-class mail, postage prepaid, addressed as follows:

Norma Hildenbrand, Trial Attorney
Liberty Center, Suite 970
1001 Liberty Avenue
Pittsburgh, Pennsylvania 15222

Sharon L. Smith, Esquire
197 Main Street
Brookville, PA 15825

/s/Rosa Richard
Office of Chapter 13 Trustee
US Steel Tower – Suite 3250
600 Grant Street
Pittsburgh, PA 15219
(412) 471-5566
cmecf@chapter13trusteewdpa.com

21